VILLAGE OF OAK PARK *v.* VANWAGONER.

DRAINS—SEWERS—ASSESSMENTS—MUNICIPAL CORPORATIONS.

In proceedings against county drain commissioner and others by village to set aside assessments upon it at large for so-called storm sewer drain, decree for plaintiff is affirmed where drain in question is in fact a sewer, the building of which was not then authorized by law (Act No. 316, Pub. Acts 1923).*

---

* But see Act No. 318, Pub. Acts 1929 (1 Comp. Laws 1929, § 4838 *et seq.*), which amended Act No. 316, Pub. Acts 1923, with reference to sewers.—REPORTER.

Appeal from Oakland; Gillespie (Glenn C.), J. Submitted January 8, 1935. (Docket No. 9, Calendar No. 37,613.) Decided May 17, 1935.

Two separate bills by the Village of Oak Park, a municipal corporation, against Murray D. VanWagoner, Oakland county drain commissioner, and others to set aside assessments levied for the construction of so-called storm sewer drains. Cases consolidated. Decree for plaintiff. Defendants appeal. Affirmed.

*Gertrude Clinton* (*Charles C. Stewart,* of counsel), for plaintiff.

*Arthur P. Bogue,* Prosecuting Attorney, and *Robert D. Heitsch,* Assistant Prosecuting Attorney, for defendants.

POTTER, C. J. In this case, the trial court's opinion so clearly states the facts, issues and governing law that it is adopted. It was said:

"These actions were brought by the village of Oak Park against the county drain commissioner and the board of county auditors of Oakland county, to cancel and set aside assessments levied against the village at large, to defray part of the cost of construction of Royal Oak No. 7 Storm Sewer Drain and Royal Oak No. 9 Storm Sewer Drain. Because both cases involved common questions, they were consolidated at the hearing.

"1. Did the county drain commissioner have authority to assess the village of Oak Park at large for any portion of the cost of Royal Oak No. 7 Storm Sewer Drain?

"Proceedings for the construction of the drain were commenced on June 3, 1927, by the filing of an application for laying out and designating a drainage district. At that time the general drain law (Act No. 316, Pub. Acts 1923) did not permit the drain commissioner to apportion any part of the cost of the project against any village. On September 5, 1927, Act No. 331, Pub. Acts 1927, which amended the drain law so as to permit a village to be assessed for benefits, became effective. Between the date of filing the application for the drain and before the amendment became operative, the county drain commissioner had made and entered an order laying out and designating the drainage district; published the notice to parties interested as required by law, and petitioned the probate court for the appointment of a board of determination. The probate court appointed a board of determination; a date of meeting was fixed and the board met and determined that the construction of the drain was necessary. The drain commissioner subsequently, on August 27, 1927, entered and filed his first order of determination, but up to this stage of the proceedings, the drain law did not authorize the drain commissioner to make the village a party to, or, assess any portion of the cost against it. The village was thus deprived of an opportunity to appear before the board of determination on the question of the necessity for the drain, which was foreclosed by the determination of the board and the first order of determination by the drain commissioner. (Act No. 316, chap. 4, § 2, Pub. Acts 1923.)

"After the 1927 amendment became effective, the village was named in subsequent proceedings, gave a release of the right of way and was assessed for benefits. In the amendments to the various sections, villages were named with the other municipal units which might be assessed for the cost of any drain, and the question is, where proceedings for the

construction of a drain were commenced under the old law, which did not authorize an assessment against a village, will an amendment to the statute while such proceeding is in progress, permit the village then being made a party after the time had passed within which it might be heard on the question of necessity for the project?

"Proceedings to establish drains are all statutory, not according to the course of common law, must strictly conform to the statutes authorizing them, and the record must show that every substantial requirement was carried out. *Harbaugh* v. *Martin,* 30 Mich. 234; *Kroop* v. *Forman,* 31 Mich. 144; *Dickinson* v. *Van Wormer,* 39 Mich. 141; *Lane* v. *Burnap,* 39 Mich. 736; *Milton* v. *Wacker,* 40 Mich. 229; *Township of Whiteford* v. *Monroe County Probate Judge,* 53 Mich. 130.

"So far as I have been able to discover the precise question has never been raised, but the omission to give notice has been held to invalidate drain proceedings. In *Watson* v. *Fox,* 251 Mich. 495, it was held the failure of a drain commissioner to give a similar notice under the section of the statute relating to intercounty drains voided a subsequent assessment. There an application had been filed for the construction of an intercounty drain. Notice of the meeting of the drain commissioners of the counties interested was not published for one full week in advance of the date of hearing as required by law. Plaintiff, a nonresident, brought suit to recover a drain tax paid under protest. The court adopted the opinion of Judge Searl, wherein he said, upon the question of failure to give the notice:

" 'The statute then in force required this notice to be published for not less than one week. Neither of the notices complied with the statute. The plaintiff in this case was a nonresident, and she was entitled to notice as required by law. The commissioners could retain jurisdiction to assess her lands in case they have not theretofore lost it, only by giving notice by publication as provided by this statute, and failing to give such notice their subsequent proceedings must be held void as to her.'

"Until the proceedings had passed the point of appointment of commissioners, who had held a meeting and made a determination of necessity, and the drain commissioner had made an order determining that the drain was necessary, the village could not have been made a party. The notice, hearing and order of determination are an essential part of every drain proceeding, without which a subsequent assessment for benefits cannot be sustained. Plaintiff could not have been lawfully made a party to the proceeding until after these jurisdictional acts had been performed. The amendment of 1927 does not indicate that it was intended to have retroactive effect, or, to waive such essential acts as to drain proceedings already in progress. It did not authorize the commissioner to add the village as a new party at that stage of the project.

"2. Did the drain commissioner have authority to construct the drains?

"The estimated cost of drain No. 9 was $10,000, and of No. 7 was $191,000. Both were of an underground type, of vitrified, double strength sewer crock, with catch basins for surface waters and Y connections for sanitary sewer connections for each residence lot. They were a typical type of combined city sewer and drain, capable of caring for sanitary sewage and surface water of the whole area served when completely built up. Neither was a drain within the provisions of the drain law, and both are of the type condemned by the Supreme Court in: *Clinton* v. *Spencer,* 250 Mich. 135; *Kinner* v. *Spencer,* 257 Mich. 142; *Township of Lake* v. *Millar,* 257 Mich. 135.

"3. Is the village estopped to question the validity of the proceedings?

"The village authorities had knowledge of the pendency of the proceedings and of the construction of the drains, approved both projects and gave releases of the necessary rights of way. Residents of the village are now using both drains for the dis-

posal of sanitary sewage, and the village is receiving a benefit through the carrying away of its surface waters. It is undisputed that the entire amount assessed against the village property is less than it would have cost the village to construct the drain itself. Under these circumstances, counsel for defendants insist the village, having knowledge of and given its support to the projects, and making use thereof upon completion, knowing they must be paid for by assessment upon the property benefited, cannot now question validity of the tax.

"The rule is well settled in this and other jurisdictions, that where the owner of property sits by while improvements are being made under statutory authority, knowing that the only method of compensating those who perform the labor is by an assessment for benefits, cannot, after the benefits have been reaped, resort to a court of equity for redress for irregularities in the proceedings. *Harwood* v. *Huntoon, Drain Commissioner,* 51 Mich. 639; *Hall* v. *Slaybaugh,* 69 Mich. 484; *Moore* v. *McIntyre,* 110 Mich. 237; *Township of Walker* v. *Thomas,* 123 Mich. 290; *Township of Swan Creek* v. *Brown,* 130 Mich. 382; *Watson* v. *Fox, supra.*

"A different rule applies, however, where the proceedings are void, because then a jurisdictional question is involved, which may be raised at any state of the proceedings.

"In *Taylor* v. *Burnap,* 39 Mich. 739, plaintiff petitioned for a drain, but the commissioner's notice was not sufficient to confer jurisdiction upon him. Defendant raised the question of estoppel, but the court held that one who petitions for a drain is presumed to petition for a legal proceeding, and is not therefore estopped from complaining where the proceeding is illegal, saying in part:

"'As to the second ground (estoppel) it is enough to say that the plaintiff must be supposed to have petitioned for a legal and not an illegal action on the part of the commissioner, and it would be startling to hold that because he applied for the prosecution of lawful methods, he should therefore be precluded from complaining against unlawful ones enacted to his prejudice.'

"In *Kinner* v. *Spencer, supra*, plaintiffs, some of whom petitioned for the improvement, filed bills to restrain the collection of taxes assessed to pay for the construction of a sewer, the proceedings for which had been held invalid in a prior case (*Clinton* v. *Spencer, supra*). There too, the plaintiff herein, had executed a release of the right of way for a bridge. One of the defenses was estoppel, the position of defendant being thus stated in counsel's brief on pages 6 and 8:

" 'The contention of the appellants in this case is that the plaintiffs cannot maintain this action; we insist that as to these plaintiffs and to all others in a similar situation, they are estopped by the provisions of the drain law from maintaining this action because of the provisions relative to certiorari found in section 11, chap. 6, Act No. 316, Pub. Acts 1923, commonly called the drain law. * * *

" 'The plaintiffs failed to raise their objections within the time limited and in the manner above provided. Where the interested parties neglect to avail themselves of the remedy provided by this section, they may not collaterally attack the proceedings to construct a drain in a suit in equity, or in any other action, in the absence of fraud. The Supreme Court has held in many cases that a bill in equity cannot be maintained to enjoin proceedings under the drain act, where the party had neglected to review the claim of alleged defects or want of jurisdiction by certiorari as required by the statute.'

"The court affirmed the decree of the lower court, saying in part:

" 'From this they draw the inference "that had the plaintiffs received notice and remained quiescent a different opinion undoubtedly would have been given," and insist that, because the plaintiffs in these cases "received all the notice which the law requires that they shall be given," the statements heretofore quoted should not be held to be decisive of the question here presented.

" 'Be that as it may, we have no hesitation in adopting what was therein said on the question of jurisdiction as an opinion in this case, and again hold that the petition conferred no jurisdiction upon the drain commissioner to take the action which resulted in the spreading of an assessment on the property of the plaintiffs.'

"In *Township of Lake* v. *Millar, supra*, a bill was filed to declare certain drain proceedings fraudulent and void, and to restrain the assessment and collection of taxes, by plaintiffs, some of whom had petitioned for the improvement, which had been constructed and was in use at the time the suit was com-

menced. The court, reversing the holding of the lower court, held plaintiffs were not estopped from questioning the validity of the proceedings of the commissioner, saying in part:

" '"The question is presented whether a petition for a drain confers jurisdiction upon the drain commissioner to build a sewer; whether a petition to the drain commissioner to do something within the scope of his authority confers jurisdiction upon him to do something wholly without the scope of his authority; whether a petition to do something he has a right to do confers jurisdiction upon him to do something which he has no right to do; whether upon filing a petition for a drain which he has a right to build, the commissioner may lay out and construct a sewer which he has no right to build? A drain commissioner may not, by mere assumption of authority, legally do that which he has no authority to do. If, upon a petition to do what he has a right to do, he may do what he has no right to do, the extent of his authority is measured by his own acts and conduct and not by law. The extent of the authority of the people's public agents is measured by the statute from which they derive their authority, not by their own acts and assumption of authority. The rule is that errors and irregularities in drain proceedings must be taken advantage of by certiorari, but an entire want of jurisdiction may be taken advantage of at any time. The drain commissioner had no jurisdiction to construct a sewer any more than to construct a Covert road. No one will contend that if the drain commissioner, when the petition for a drain was filed with him, had laid out an assessment district, established and constructed a Covert road, the plaintiff would have been without remedy. The same legal question is here presented. The proceedings are void for want of jurisdiction.'

"These authorities conclusively settle the law in this State that, property owners assessed for benefits, even though they participate in the improvement and fail to avail themselves of the statutory remedy for review, are not estopped to thereafter attack such proceeding, where the objections raised go to the jurisdiction and involve constitutional rights.

"The general rules of estoppel, as applied to void acts, are thus summarized:

" 'In accord with the general rules already discussed, the rule is laid down broadly in many decisions that a municipal corporation is not estopped to deny the want of power to make a contract by receiving the benefits thereof; and it has even been held that a full performance by the contractor of a contract with a city which is void because opposed to the Constitution and laws and contrary to public policy will not prevent the city from pleading its want of power and the illegality of the contract. If the thing done is illegal, or unwar-

ranted by law, however beneficial it may be, the public is not estopped to deny its validity.' 21 C. J. p. 1214.

" 'The doctrine of estoppel cannot be applied against the city to validate a contract which it has no power to make, or which has ceded away, controlled, or embarrassed its legislative or governmental powers. Generally a municipal corporation is not estopped from denying the validity of a contract made by its officers, when there has been a total absence of authority for making such contract. And if the contract is absolutely *ultra vires*, the municipality is not estopped to deny its validity, though the benefits thereof have been received by the municipality.' 10 R. C. L. pp. 708, 709.

"In *Keese* v. *City of Denver*, 10 Col. 112 (15 Pac. 825), an action was brought to restrain the sale of real estate under an unpaid assessment for a sewer tax. The petition was not signed by a sufficient number of citizens to authorize the city to act on the petition. The conclusions of the court on the question of estoppel, are thus summarized in the syllabus (Pac.):

" 'Plaintiffs, taxpayers, had allowed a city to complete a sewer, and then filed a bill to enjoin the collection of the assessment therefor, alleging that the city was not authorized to build it. Held, that the objection was jurisdictional, and the principles of estoppel, through the failure of plaintiffs to object, did not apply.'

"In *Coit* v. *City of Grand Rapids*, 115 Mich. 493, cited by defendants' counsel, the act relied upon to create an estoppel was not void. The gist of the opinion, upon the question of estoppel, is summed up in the following quotation from the opinion:

" 'Where the executed contract is neither *malum in se* nor *malum prohibitum*, but can only be avoided because of defects in the manner of its execution, the corporation cannot retain the benefits and deny its authority.'

"*First National Bank of Red Oak* v. *City of Emmetsburg*, 157 Iowa, 555 (138 N. W. 451, L. R. A. 1915 A, 982), also relied upon by defendants, is not in point. There the city had power to construct a sewer, but had exercised such power in an irregular manner, and it was held that, having accepted the benefits of the contract which it had entered into, it was estopped to deny liability for benefits received.

"Here we are not dealing with an irregular exercise of power on the part of the drain commissioner,

or, with procedural defects in the proceedings under which the sewers were constructed. The statute did not authorize the construction of either project, or the assessment of the tax. The acts of the drain commissioner were without warrant in law, and any tax levied and collected as a result thereof would constitute the taking of property without due process of law. Under such circumstances, no estoppel would arise to bar an action to restrain the collection of the void tax.

"A decree will be entered in each case, in accordance with the prayers of the bills of complaint, canceling and setting aside all assessments levied against plaintiff in connection with the construction of such drains, and permanently restraining defendants from collecting or attempting to collect the same or any portion thereof. Inasmuch as the questions involved are of a public nature, no costs will be taxed."

The decree of the trial court is affirmed, but without costs.

NELSON SHARPE and EDWARD M. SHARPE, JJ., concurred with POTTER, C. J.

FEAD, J. (*concurring*). I concur because the project was a sewer, not a drain. But do not agree, nor express opinion thereon, that the plaintiff would not have been a proper party, or be estopped, if jurisdiction of the subject matter had been had.

NORTH, WIEST, BUTZEL, and BUSHNELL, JJ., concurred with FEAD, J.